IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-519-6 |
| | : | |
| XAVIER TOWEL | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                          **May 13, 2019**

On February 8, 2014, Defendant Xavier Towel was taken into custody by the Commonwealth of Pennsylvania and charged with various drug and firearms offenses.[1] After Towel served more than a year in state custody, the state charges were nolle prossed. Towel was later charged in the above-captioned case with federal offenses arising out of the same conduct underlying the state charges.[2] *See* Indictment, ECF No. 1. On October 4, 2018, Towel pleaded guilty in this Court to conspiracy to distribute 28 or more grams of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), a lesser included offense of Count 1 of the federal indictment.

On April 2, 2019, the Court convened a sentencing hearing. At that hearing, the Court calculated Towel's advisory sentencing range under the United States Sentencing Guidelines as 37 to 46 months of incarceration. Towel requested a variance, in part, to reflect the 17 months Towel served in state custody on the nolle prossed charges. Both Towel's counsel and counsel for the Government appeared to agree that, absent a variance, he would not otherwise get credit toward his sentence for the time he served in state custody. *See* Sentencing Tr. 14:20-15:11.[3] On

---

[1] *See Commonwealth v. Towel*, Docket No. CP-51-CR-0002703-2014 (Pa. Ct. Com. Pl.).

[2] However, the federal government never formally adopted the state prosecution.

[3] The transcript of Towel's sentencing hearing is attached hereto as Exhibit 1.

that basis, the Court varied downward from the bottom of the advisory Guideline range, and pronounced a sentence of 20 months of incarceration.

On April 11, 2019, the Court entered a Judgment & Commitment Order (J&C Order) in Towel's case. The J&C Order reflected that Towel was sentenced to 20 months but, as was the usual practice of this Court, did not indicate that the sentence included a 17-month variance for the time Towel served in state custody. *See* J&C Order 2.

On April 12, 2019, Towel reported to serve his sentence. Not long thereafter, Towel was released from federal custody. Sensing something was amiss, Towel—commendably—contacted Chambers for guidance. The Court then held two teleconferences with the parties and Towel's probation officer, during which it learned that the BOP—unaware of the variance and its justification—also gave Towel credit towards his 20-month federal sentence for the time he served in state custody on the nolle prossed charges. Thus, because of the Court's omission of the variance from the J&C, Towel received credit for his time in state custody twice—first from this Court in the form of a variance, and again from the BOP when it calculated his release date.

Federal Rule of Criminal Procedure 36 vests the Court with the authority to correct a clerical error in a written judgment of sentence. *See* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."). "Rule 36 is normally used to correct a written judgment of sentence to conform to the oral sentence pronounced by the judge." *United States v. Bennett*, 423 F.3d 271, 278 (3d Cir. 2005). "A clerical error involves a failure to accurately record a statement or action by the court or one of the parties." *Id.* (quoting 26 James Wm. Moore et al., *Moore's Federal Practice* ¶ 636.02[2] (3d ed. filed through 2005)). Moreover, "a clerical error must not be one of judgment or even of

misidentification, but merely of recitation of the sort that a clerk or amanuensis might commit, mechanical in nature." *Id.* (quoting *United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir. 1987)).

Having provided notice and an opportunity to respond to the parties (including two teleconferences with counsel and one hearing at which Towel was present), the Court will exercise its Rule 36 authority to amend Towel's J&C Order to reflect the 17-month variance and the reason for it. As described above, in pronouncing sentence, the Court fashioned a sentence accounting for the time Towel served in state custody. However, that variance and its justification were omitted from the J&C Order. This omission triggers this Court's authority under Rule 36—i.e., an omission during the transposing of the Court's on-the-record sentence to the written J&C Order, which resulted in the the subsequent double-counting of Towel's state time by the BOP, despite the Court's clear intention that the time be counted once. Thus, pursuant to Rule 36, the Court will enter an amended J&C Order containing reference to the variance and its justification. *Bennett*, 423 F.3d at 278.

**CONCLUSION**

Because Towel's original J&C Order omitted reference to the variance and its justification, the Court will exercise its authority pursuant to Federal Rule of Criminal Procedure 36 to enter an Amended Judgment & Commitment Order reflecting the Court's oral pronouncement of sentence. More specifically, the original J&C Order will be amended to include the following bolded language:

> The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 20 months on the lesser included offense of Count 1, **which accounts for the 17 months the Defendant served in the custody of the Commonwealth of Pennsylvania in connection with** ***Commonwealth v. Towel***, **Docket No. CP-51-CR-0002703-2014 (Pa. Ct. Com.**

**Pl.), and thus alleviates any need for the Bureau of Prisons to consider the time Defendant served in state custody in calculating his release date**.

The court makes the following recommendations to the Bureau of Prisons: Defendant is to be housed as close to Philadelphia as possible, **and the Bureau, when calculating Defendant's release date, shall not credit Defendant with time served in state custody.**

Given the unusual nature of the issues addressed in this Memorandum, the Court will suspend execution of this sentence for thirty days from the date of the filing of the Amended J&C Order. In the event Towel appeals this Court's decision to the Third Circuit Court of Appeals, the Court will entertain a motion for bail pending appeal pursuant to 18 U.S.C. § 3143(b).

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

                                    :
THE UNITED STATES OF AMERICA,       :  Case No. 2:17-cr-00519-JS-6
                                    :
          Plaintiff(S),             :
                                    :
          v.                        :
                                    :  Philadelphia, PA
XAVIER TOWEL,                       :  April 2, 2019
                                    :  10:13 a.m.
          Defendant.                :
                                    :
-------------------------------x

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JUAN R. SANCHEZ,
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:        JONATHAN B. ORTIZ, ESQ.
                           U.S. Attorney's Office
                           615 Chestnut Street, Suite 1250
                           Philadelphia, PA 19106

For the Defendant:         NOAH GORSON, ESQ.
                           GORSON & GORSON
                           1616 Walnut Street
                           Suite 1300
                           Philadelphia, PA  19103

Court Reporter:            DONNA CROCE
                           Clerk's Office
                           U.S. District Court

Transcription Service:     Burke Court Reporting, LLC
                           1044 Route 23 North, Suite 206
                           Wayne, NJ 07470
                           (973) 692-0660

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

1                                     INDEX

2

3                                                                 PAGE

4    SENTENCING

5    Defense argument                                         7

6    Government's argument                                    15

7    Defense rebuttal argument                                22

8    Defendant's statement to the Court                       24

9    Court's ruling                                           29

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(10:13 a.m.)

THE COURT:  Be seated.  This is the matter of the United State of America versus Xavier Towel, Criminal No. 17-519.  The Court recognizes the Assistant United States Attorney, Jonathan B. Ortiz.

MR. ORTIZ:  Good morning, Your Honor.

THE COURT:  And also the case agent, Agent John Bowman.

MR. BOWMAN:  Good morning, Your Honor.

THE COURT:  Good morning, Agent Bowman.

The Court also recognizes defense counsel, Noah Gorson.

MR. GORSON:  Good morning, Your Honor.

THE COURT:  Good morning, Mr. Gorson.  And next to Mr. Gorson is the Defendant, Mr. Towel.

THE DEFENDANT:  Good morning, Your Honor.

THE COURT:  The Court also recognizes our probation Officer Darian Prioleau.

MR. PRIOLEAU:  Good morning, Your Honor.

THE COURT:  Did I get that right?  Pretty sure I messed it up.

MR. PRIOLEAU:  Close enough.

THE COURT:  Say that again?

MR. PRIOLEAU:  Prioleau.

1      THE COURT:  Prioleau, all right.  You don't come in

2  here enough for me to remember, but Prioleau.  Prioleau, thank

3  you very much for correcting me.

4      I had an opportunity to review the presentence

5  investigation report and I noted that on October 4th, 2018 he

6  pleaded guilty to conspiracy to distribute 28 grams or more of

7  cocaine base, in violation of Title 21, Section 846, 841(a)(1),

8  841(b)(1)(B), a lesser included offense of Count I of the

9  September 27th, 2017 indictment.

10      And I noted that the Government did not file any

11  motions under 5(k)1.1 or Title 3553(e), but the Government

12  acknowledges and concedes that the statutory safety valve in 18

13  U.S.C. 3553(f) applies in this case.  And so the Court is free

14  to impose a sentence outside the mandatory minimum because the

15  defendant does not have any criminal history points.  The

16  defendant did not use violence or threat of violence or possess

17  a firearm in connection with the offense.

18      The defendant -- did not result in death or serious

19  bodily injury.  The defendant was not an organizer, leader, or

20  supervisor of others in the offense or involving the criminal

21  enterprise.  And the defendant did not -- has provided all

22  information that he knows concerning the offense that was part

23  of the same course of conduct to the Government.

24      The Government agrees, correct?

25      MR. ORTIZ:  Yes, sir.

1          THE COURT:  So I make those findings, and I just

2     want to ask counsel whether he had an opportunity to review the

3     presentence investigation report that was initially prepared

4     December 28th, 2018 and then revised January 14, 2019 with your

5     client?

6          MR. GORSON:  Yes, I have, Your Honor.

7          THE COURT:  And are there any other additions,

8     modifications, or corrections that I need to be aware of?

9          MR. GORSON:  No, Your Honor.

10          THE COURT:  And Mr. Towel is fully aware of the

11     contents of the presentence investigation report, right?

12          MR. GORSON:  Yes.

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  The Government doesn't have

15     any corrections or modifications to the sentence report?

16          MR. ORTIZ:  No, sir.

17          THE COURT:  So I will fully adopt and credit a

18     presentence investigation report the factual findings and the

19     Government's obligations and calculations in the presentence

20     investigation report.

21          And as you well know because I have adopted the

22     presentence investigation report, the statutory maximum and

23     minimum terms of imprisonment for the lesser included offense

24     of Count I, which is the conspiracy to distribute 28 or more

25     grams of cocaine base in violation of Title 21, Section 846 and

1  841-81, (b)(1)(B) is 40 years, the statutory minimum term of

2  imprisonment is five years, but he's safety valve eligible and

3  the statutory maximum fine is $5 million and the statutory

4  minimum term of supervised release is four years.

5        The guidelines set the base offense level in this

6  particular case at 26.  Under the sentencing guideline,

7  2.D.1.A.5 and (c)(7), two levels were subtracted because he

8  meets the criteria in subdivisions 1 through 5 of Section 8 of

9  the guideline Section 5(c)1.1, which mirrors the safety valve

10  in Title 18 Section 3553(f).

11        Two more levels were subtracted under the guideline

12  of Section 3(e)1.1(a) because the defendant clearly

13  demonstrated acceptance of responsibility for the offense.  One

14  additional level is subtracted under the guidelines Section

15  3(e)1.1(b) because he assisted the authorities in the

16  investigation of prosecution of his own misconduct by timely

17  notifying the authorities of his intention to plead guilty.

18        Given that, the offense level is 21.  The criminal

19  history points gives me a criminal history category of 1, and

20  given that the guideline range for offense level 21 and

21  criminal history category 1 is 37 to 46 months which is a

22  factor that I have to consider in deciding what will be an

23  appropriate sentence for his misconduct, taking into account

24  the 3553(a) factors.

25        So with that, I will then hear any evidence that

1   either the Government or the defense has to offer or argument

2   or both under 3553(a) factors.  And then I usually hear the

3   defense first, give the Government an opportunity to respond

4   and give your client an opportunity to address the Court.

5           MR. GORSON:  Very well, Your Honor.

6           THE COURT:  Do you have any witnesses to offer?

7           MR. GORSON:  Judge, not too many witnesses, but as

8   you can see there's a number of individuals in the courtroom

9   today.  They are the family members and I will read the names

10  for the record just to --

11          THE COURT:  Would you.

12          MR. GORSON:  -- and indicate what the relationship is

13  to Mr. Towel.  And I'll ask each of them to stand when I call

14  out their name.  So, his mother, Electra Fleetwood is here, and

15  Your Honor will recall because she testified early on in the

16  proceedings when we had some issues regarding --

17          THE COURT:  The bail, yeah.

18          MR. GORSON:  -- the pretrial release.

19          Also, with her is Mr. Towel's stepfather, Eric Chase.

20  And you may sit down if your name is called, yes.  You can sit

21  down, yes.

22          And as Your Honor will recall, Mr. Towel's fiancée,

23  Lois Williams is here.  Her sister is looking after the three

24  children today so that she can be here and not be distracted by

25  the three children.

1          With her is a very close family friend, Chakiera

2    Murray.  And also with the -- in support of the -- Mr. Towel

3    are his mother and father-in-law essentially, Lois Jackson and

4    Tim Jackson who are here to indicate their support of him as

5    the fiancée to their daughter, Lois, and also as a good parent

6    to their two children and also stepdaughter.

7               THE COURT:  Go ahead.

8               MR. GORSON:  Okay.  At this juncture, Your Honor, I

9    would -- I'm sure the Court has received and reviewed the

10   sentencing memorandum and the request for variance as well as

11   the supplemental sentencing memorandum.

12               As the Court recalls the superseding indictment

13   essentially alleged two predicate acts.  Those two acts

14   involved an offense in 2010 and then another one in the early

15   part of 2014.  And because they were predicate and subsumed to

16   the indictment, they didn't add any criminal history category

17   points anyway.

18               The first one result, it was a mere possession case,

19   it resulted in a three year probationary sentence.

20   Unfortunately that was not enough, obviously, to dissuade Mr.

21   Towel from hanging out at the grounds and working with some of

22   the people the Court is very familiar with due to the various

23   proceedings in front of the Court, as a look-out and also as a

24   seller or runner on behalf of the grounds.

25               In February of 2014 he was arrested for just that,

1 for the conspiracy to distribute.  He was incarcerated in one

2 of the Philadelphia County prisons over at PICC.  From February

3 8/20/14 until he was released in June of 2015, June 25th, 2015.

4          At that point in time, the Philadelphia County

5 charges were null prossed, in other words, they were dismissed

6 so that they could be assumed by the federal government, which

7 they were in the indictment.

8          So Mr. Towel did spend 17 months in custody as a

9 result of one of the predicate acts that had been adopted by

10 the federal government and are recited in the superseding, as

11 well as the original indictment.

12          As the Court is well aware, from that point forward,

13 from his release date from the Philadelphia County prison back

14 in June of 2015, so almost, not quite, almost four years have

15 elapsed, Mr. Towel has been a model citizen and parent to now

16 his two sons, one who's three years old, Jalio and Xavier, Jr.

17 who will be five years old this month, as well as to his

18 stepdaughter, Miera who is nine years old, who he literally

19 treats as, you know, one of his and cares for them.

20          Also when Mr. Towel was arrested in October of 2017

21 on the federal charge, the Court -- we had some proceedings

22 before the Court and ultimately the Court felt that Mr. Towel

23 could remain on bail, subject to numerous conditions and quite

24 appropriate conditions.  And the Court is well aware that

25 throughout that period of time which is also roughly 17 months,

1  Mr. Towel has been fully compliant.  It's mentioned in I

2  believe paragraph 10 of the presentence investigation report

3  with the probation office in terms of his home detention.

4  So each and every time that he left the home it was

5  with the permission and consent of his probation officer.  So,

6  for example, he drives his children to school in the morning.

7  He had a job.  He was working until it is that this case was

8  initially scheduled for sentencing and because he and his

9  employer were concerned about, you know, what the consequences

10 were, he was, you know, temporarily let go.  But he had been

11 working all during that time period.

12 Once it is that he wasn't working he remained home

13 and he took care of the children, got them ready for school so

14 that Lois, Your Honor may or may not recall, but Lois works as

15 a nurse at a hospital, so her hours are 7 to 7, so does a 12

16 hour shift.

17 When she comes in the morning, she's incredibly

18 fatigued, he gets the children ready for school.  He takes the

19 children to school.  He remains home, unless it is that he has

20 one of the appointments that the probation officer agrees he

21 can attend such as to my office.  And then he's there in the

22 evening to assist in caring for the children, reading to them,

23 doing all the things that, you know, a parent ought to do.

24 I would suggest to the Court that to impose a

25 lengthy, I mean, within the guidelines, you know, 37 months,

1   low end of the guidelines, that is three years to take him

2   away from his family when he's already demonstrated to the

3   Court that for the last four years of his life, he has been a

4   law abiding citizen.

5           He has been a good parent as the grandparents, the

6   paternal grandparents are here -- I can't think of any better

7   attestation to a son-in-law than the parents of the spouse to

8   show up in court to support him as a good spouse, as well as a

9   parent to their grandchildren.  I can't think of any better

10  indication that he is just that.

11          He is a changed individual from the young man that he

12  was at the beginning of his activities with Bo and the rest of

13  this group.  I mean, he was very -- I think the first incident

14  he was 18 years old, back in 2010.  And here we are in 2019, so

15  we're eight plus years later, he is a changed person.

16          It is a fair and appropriate factor to take into

17  account, i.e., post, you know, activity rehabilitation, which

18  he has demonstrated.  This is not a situation where he's in

19  jail on this case and he's back in front of the Court on a

20  resentencing, he says, well look, you know, I've been in jail,

21  I've been doing all these things, I've rehabilitated.  No, he

22  was out.  He had plenty of chances to fall off that path of

23  good citizenship for the last almost four years and didn't.

24          And I would suggest for the Court and we went over

25  some of this at the pretrial release hearings, because one of

1    the issues was, well, does the Government have anything other

2    than the predicate acts that were recounted in the indictment

3    to show that from February of 2014 that this defendant had done

4    anything, any other criminal activity had he been engaged in

5    that the Court should be apprised of.

6              And the Government candidly said no, Judge.  What we

7    have are these predicate acts, we have a conspiracy that based

8    upon our own investigation went from 2010 to 2015.

9              Now, Mr. Towel was in jail in the Philadelphia County

10   prison from early 2014, so from February of 2014 until today

11   he's not been involved in any, any criminal activity of any

12   nature whatsoever.

13             Now, obviously when he was in jail from February 2014

14   to June of 2015 one would certainly, you know, hope and expect

15   that he remained, you know, drug free and free of criminal

16   activity.  But even since that time, since June of 2015 he has

17   remained, you know, outside of the criminal justice system.

18             There's been no hot urines and to me and the Court

19   I'm sure also has had plenty of experience of individuals who

20   are out on pretrial release, and they -- minor violations that

21   sometimes when there's more than one without a doubt, their

22   bail conditions have been breached and the bail was revoked and

23   they sent away.  But there wasn't even one single event that

24   brought us into the courtroom.  An infraction of he was out

25   when he shouldn't have been out, he came in and it was a hot

1  urine.  There wasn't one single event.

2      I think, Your Honor, that the recommendation that

3  I've made in the sentencing memorandum I filed on behalf of Mr.

4  Towel, which would allow him to continue on house arrest.  So

5  if the Court can continue to monitor him through the probation

6  office.

7      Without a doubt, I do not believe that he is going to

8  let this Court down.  I do not believe without a doubt he's

9  going to let his family down.  I don't believe without a doubt

10  that he's going to let down Lois and Tim Jackson his in-laws,

11  who I'm sure will be the first ones to let the Court or the PO

12  office know that there's son-in-law is doing something that is

13  potentially harmful to their daughter or to their three

14  grandchildren that are, you know, in his charge.

15      Because I know that no parent would want their child

16  or grandchildren in harm's way.  So without a doubt I'm sure

17  they'd be the first ones to let the Government know.

18      That being said, Your Honor, I would strongly urge

19  the Court to apply variances.  I think they are appropriate in

20  this case, and that's not always the situation that I have.  I

21  mean, often times I'm parroting, you know, boilerplate variance

22  language.  But in this particular instance, I think it really,

23  really is warranted by the circumstances of the post event

24  rehabilitation that Mr. Towel has established for the Court,

25  and for the benefit of himself, and for the benefit of his

1   family.

2          I know that he would like like to address the Court

3   at the appropriate time.  So that being said, Your Honor, I

4   would ask that the variances that I've argued here today as

5   well as in the memorandum, and I've attached letters from

6   neighbors, you know, not just from family members, from

7   neighbors in the community that do attest to his helpfulness.

8          Now, granted for a period of time he was, you know,

9   on the wrong path.  But certainly since the day he was released

10  from PICC on June 25th, 2015 he seems to have done everything

11  that our system and 3553 implores as one of the goals,

12  punishment, sending a message to other individuals that you

13  can't get away with certain activities of criminal behavior,

14  absolutely.

15         But in terms of the rehabilitation aspect of 3553(a)

16  factors Mr. Towel has demonstrated that he is on the road, if

17  not already, rehabilitated.

18              THE COURT:  Very well.

19              MR. GORSON:  Thank you, Your Honor.

20              THE COURT:  I have a question, does he get credit for

21  -- the only thing holding him --

22              MR. GORSON:  No.  He won't get creditor for PICC.

23              THE COURT:  Okay.

24              MR. GORSON:  No, that's why it is that it's being

25  argued as a variance.

1    THE COURT:  All right.  You're asking me to

2  consider that as a reason to vary.

3    MR. GORSON:  I'm asking you to take that into

4  consideration, he will get no credit for that --

5    THE COURT:  All right.

6    MR. GORSON:  -- and it's literally the same exact

7  charge.

8    THE COURT:  Do you agree, he doesn't get credit for

9  the 17 months he stayed waiting and the case was adopted?

10    MR. ORTIZ:  I don't know for certain, but I don't

11  think he'll get a credit for it.

12    THE COURT:  Yeah, I don't think he gets credit for

13  it, I agree.

14    Attorney Ortiz, would you like my full sentencing

15  argument now or after?  Yeah, why don't you -- no, I'm going to

16  hear him last.

17    MR. ORTIZ:  Okay.  Your Honor, obviously you have

18  heard a great deal about this case from both the related

19  indictments.  You sat through two trials --

20    THE COURT:  Right.

21    MR. ORTIZ:  -- and you've seen many people plead

22  guilty so you know the whole facts of kind of what this is all

23  about, so I'm not going to spend a lot of time going through

24  that.

25    But when it comes to kind of sizing up Mr. Towel's, I

1 think that there are a couple of things that sort of bear

2 noting, especially after hearing Mr. Gorson's argument for what

3 he's seeking.

4        Although Mr. Towel does present to you as somebody

5 with little to no criminal history and family support, I think

6 there are aspects of kind of what he's asking for that aren't

7 really supported by what -- who he has been up until this point

8 in time.

9        And counsel's asking for --

10        THE COURT:  But I asked you at the bail hearing

11 because I was concerned.  I think I asked from February of 2014

12 or at least from 2015 whether he in any way shape or form was

13 involved post the two predicate acts any wrongdoing.  And I

14 think you said no.  Is that still the answer, he's been

15 involved in absolutely no wrongdoing?

16        MR. ORTIZ:  As far as I know, yes.  So that --

17        THE COURT:  Yes, he has not been involved.

18        MR. ORTIZ:  Correct, yes.

19        THE COURT:  Isn't that commendable?

20        MR. ORTIZ:  It is commendable, yes.

21        THE COURT:  Okay.

22        MR. ORTIZ:  But I don't know that necessarily who he

23 is now results in the type of variance that counsel's asking

24 for.

25        THE COURT:  Well, I can't consider his post-

1  conviction conduct under <u>Pepper</u> as a reason to vary because

2  he hasn't committed any crime.  And this offense based back to

3  -- as counsel as ably stated, 2010 and 2014, that's a long time

4  ago, five years.

5       Most people you give them five years, that's a lot of

6  work for them to hang themselves and he hasn't done that living

7  in a very tough neighborhood.

8       So that is the kind of thing that warrants some

9  consideration on departure from the applicable guidelines.

10  Don't you agree?

11       MR. ORTIZ:  I think that it's worth consideration,

12  but when counsel submits in his sentencing memorandum that he's

13  asking for one month of incarceration, 12 months of home

14  detention, I don't believe that coming down from 37 months to a

15  sentence like that that he's asking for his papers is warranted

16  who Mr. Towel is.

17       And in support of that, what I would kind of direct

18  you --

19       THE COURT:  But you will agree, I mean in due

20  fairness we lock kids up and put them away for a long time.

21  This kid 2010, 2014 some possession charge he got in trouble

22  because he was involved in some previous activity, I heard all

23  about it, he was the look-out.  But, you know, it gives me hope

24  that he's been out on bail and he's complied with everything

25  we've asked him to do.

1      He's been a productive member of society and he

2 hasn't committed any crimes in five years.  That gives me sort

3 of a good indication of the likelihood, strong likelihood,

4 given the fact that he was 21 years old when he committed this

5 crime, I was very young, he's now a -- seems to be 26 years

6 old, fully mature adult that, you know, with this limitations

7 is being productive.

8      At home, he's working and --

9      MR. ORTIZ:  Well, actually, Judge, he isn't working

10 and the presentence report lays out in great detail how he has

11 --

12      THE COURT:  Well, you don't consider taking care of

13 kids and being productive at home work?

14      MR. ORTIZ:  I think that's absolutely commendable,

15 but I don't want you to have the impression that Mr. Towel is

16 doing many of the things that are normally presented to a Court

17 of extraordinary improvement that justify the type of variance

18 that he's seeking.

19      Mr. Towel hasn't held a job.  He hasn't been doing

20 volunteerism, he hasn't been doing anything in support of his

21 stated goal of being a community activist and inspiring the

22 youth.  He's done nothing and presents nothing in that vein to

23 you.

24      THE COURT:  He also hasn't committed another crime or

25 got in trouble either.

1    MR. ORTIZ:  Correct.  And I --

2    THE COURT:  That is commendable for --

3    MR. ORTIZ:  I'm not saying that it's not.

4    THE COURT:  -- a kid living in those circumstances,

5  yeah.

6    MR. ORTIZ:  Judge, I'm not saying that it's not.  But

7  what I'm saying to you is, there are a number of the factors

8  under 3553(e) that you have to consider, I'm sorry, 3553 that

9  you have to consider some of which have to do with his

10  character, his history, his circumstances, but many of which

11  also have to do with the nature of the crime of what he

12  actually was doing.

13    And what I would submit to you is that Mr. Gorson is

14  severely minimizing the significance of this particular case

15  and who Mr. Towel was.  And, yes, he was engaged in hand-to-

16  hand sales of crack cocaine, but that isn't all of this case

17  was and you know that.

18    This was a drug conspiracy that lasted for years on

19  end, and basically overtook a playground so that they could

20  engage in sales day and night --

21    THE COURT:  But he was not the leader, the organizer

22  or anything along those lines.  His criminal conduct selling

23  and being a look-out bears in comparison to the other

24  characters in this case.  You will agree with that?

25    MR. ORTIZ:  Yeah, I will.  But I --

1        THE COURT:  And what is more important I think is

2   the conduct after.  He's had five years, five years, and he

3   hasn't committed another crime.  The other people were involved

4   in significant crime even through and up to the period of the

5   arrest.

6        MR. ORTIZ:  Well, Judge, I mean, what I would submit

7   to you if you want to take a position of viewing it from a

8   timeline standpoint, I would point out the fact that Mr.

9   Towel's friend was murdered in connection with this drug

10  conspiracy in August of 2013.

11       THE COURT:  You cannot put it on his feet.

12       MR. ORTIZ:  I'm not putting it on him, but continuing

13  after that for at least six months by his own admission he was

14  still out in that same playground doing the same conduct.

15       THE COURT:  Again, since 2015, four years since 2014

16  when he was incarcerated is five years without getting involved

17  in any criminal activity.  Significant period of time he was a

18  young man when he was out in the streets, 18 to 21, young, a

19  young man.  I think he's grown up quite a bit and you will

20  agree that that is entitled to some consideration --

21       MR. ORTIZ:  Judge --

22       THE COURT:  -- including a variance from the

23  guideline of 37 months.

24       MR. ORTIZ:  Judge, I've said several times that I

25  agree that it's entitled to some consideration.  But what is

1  also entitled to some consideration, a great deal of

2  consideration exactly what this case is all about.  What he was

3  doing, who he was, who he was associated with, and the crime

4  that was caused.

5       He wasn't just somebody that was merely possessing

6  crack cocaine.  His home was used as a stash house.  His home

7  was the location of the party that started the dispute that led

8  to Brian Little's murder.  His home was a place where all of

9  these people came together to hang out day in and day out as

10 they were selling crack cocaine in the playground.  That's not

11 insignificant.

12      Mr. Towel was only arrested two times, but that

13 doesn't mean that those are the only times and the only acts he

14 was involved in.  And under 3553, the Court has to pay service

15 to those aspects of what this case is all about, and my

16 position to you is that yes, he has done commendable things by

17 staying out of trouble; yes, he is commendable for taking care

18 of his family.  Yes, it is commendable that he has support here

19 and that does put him in somewhat of a different light as

20 compared to other defendants that come before the Court.

21      But it doesn't justify going from 37 months to a

22 month or to straight home detention.  And if you were to do

23 that, my position would be that the Court is essentially

24 disregarding the full vein of what was going on for years on

25 end by Mr. Towel and his friends and his co-conspirators.

1          So although he is entitled to some credit for what

2    he has done, the sentence that you impose still has to reflect

3    the seriousness of the offense, it has to deter others.  It has

4    to serve a purpose of correcting the wrong that was done.

5          And if Mr. Towel is presenting to you as saying, I

6    want to come out of this situation and be a community activist,

7    I want to inspire the youth, this was a perfect example and

8    case for him to do that with.  This was a group that was going

9    on in that playground in that community for years on end, and

10   everybody knew it and he was associated with that.

11         This is -- he had a tremendous opportunity to go out

12   and say, this is who I was, this is what he did, and he didn't

13   do that.

14         I think that the Court needs to give service to what

15   he was involved with.  He gets some credit, but he still

16   deserves punishment which is a proper purpose of this

17   proceeding.

18         In the context of what's been submitted to you, I

19   believe that counsel's request for the type of variance he's

20   asking for is not supported.  Thank you.

21         THE COURT:  Anything else?

22         MR. GORSON:  Judge, I would just point out, I think

23   the Court has recognized it, that Mr. Towel's actions post

24   2015, 2014 speak volumes more than words.  He is out in the

25   community obviously amongst his family in particular as --

1          THE COURT:  You don't have to repeat your argument

2    because I think I understand it fully.

3          MR. GORSON:  Very well, Your Honor.

4          THE COURT:  And he's entitled, I think, to some

5    consideration because he spent 17 months in jail, and I think

6    that alone is sufficient for a downward departure from the 37

7    months or the -- what is it the guidelines, 47 months at a rate

8    of 37 to 46.

9          MR. GORSON:  46, Your Honor.

10          THE COURT:  Is entitled to some consideration.  And I

11    do agree that the post-conviction and rehabilitation of conduct

12    --

13          MR. GORSON:  Very well.

14          THE COURT:  -- also merits some consideration because

15    if he had committed a crime or done anything I would've been

16    banging him for doing that as well.

17          MR. GORSON:  And rightfully so, Your Honor.

18          THE COURT:  However, as you all know, the nature and

19    seriousness of the offense is a factor that I have to consider.

20          MR. GORSON:  Yes, indeed.

21          THE COURT:  And he was -- granted, he was a young

22    man, a little younger, probably not a full adult at the time,

23    but he has to atone for the conduct that he engaged.  And while

24    there is some consideration to be given, I do think that a one

25    month sentence as you recommend will not -- it will depreciate

1 the seriousness of the offense and conviction, but I'm

2 willing to listen to what he has to say.

3          MR. GORSON:  Very well, Your Honor.

4          THE COURT:  Mr. Towel.

5          THE DEFENDANT:  Hey, how you doing.

6          THE COURT:  You can come forward.

7          THE DEFENDANT:  Hey, Your Honor, how you doing?

8          THE COURT:  I'm fine.  How are you?

9          THE DEFENDANT:  Fine.

10          THE COURT:  Okay.

11          THE DEFENDANT:  I did 17 months at PICC one of the

12 worst jails on state roll.  I seen a lot while I was in there.

13 One thing I can recall is my fiancée she coming up with my son

14 when he was first born and --

15          THE COURT:  When was your son born?

16          THE DEFENDANT:  He was born April the 27th.

17          THE COURT:  Of what year?

18          THE DEFENDANT:  2014.

19          THE COURT:  And you were in jail when he was born?

20          THE DEFENDANT:  Yes.  And one incident I can recall

21 she brung him up for a visit, and he was crying because they're

22 not allowed to bring pacifiers in the visiting room.  I'm

23 sorry.  But correctional officer told my son to be quiet, like

24 to shut up, like and I felt some type of way, I can't do

25 nothing, I can't say anything, and that right there let me know

1  this is not the place for me.  And I don't want my kids to

2  see me behind bars.  And just I changed.

3         THE COURT:  All right.  But you do understand that

4  you were involved in some pretty serious conduct and that you

5  have to atone for that.

6         THE DEFENDANT:  Yes.

7         THE COURT:  And, you know, the conduct calls for some

8  serious time.  You're not doing a minimum mandatory because of

9  the reasons that I articulated because you're eligible for we

10  call a safety valve, but you're looking still at pretty much

11  over -- close to four years in jail.

12         THE DEFENDANT:  Yes.

13         THE COURT:  So even if I give you a break, you're

14  still going to go to jail, you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  What guarantees -- well, you've done

17  well, but you have been on supervision.  But what guarantees do

18  I have that you're not going to commit another crime in the

19  future?  You're only doing it to satisfy me and make sure that

20  I give you a break.

21         THE DEFENDANT:  No, I plan on getting a job.  I plan

22  --

23         THE COURT:  Why haven't you gotten a job, I mean I

24  understand you --

25         THE DEFENDANT:  I did have a job.  I resigned from my

1  job so --

2        THE COURT:  Why?

3        THE DEFENDANT:  I had put in my two weeks' notice,

4  because I didn't want to get fired, I always wanted to come

5  back to that job because it was a good job, and I was getting

6  ready to come to trial, I thought I was going to go all the way

7  through out trial, not plead guilty.

8        THE COURT:  But how long have you not been working?

9        THE DEFENDANT:  I've not been working for like --

10 since October.

11       THE COURT:  Of last year?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Okay.  And why you haven't looked for

14 another job?

15       THE DEFENDANT:  I've been looking.  Definitely, I'd

16 been on the D Zip Recruiter, I've been looking, I'm just

17 waiting for somebody to give me a call back.

18       THE COURT:  Okay.  Anything else you want me to

19 consider?

20       THE DEFENDANT:  I just ask for mercy from the Court

21 and I apologize to my family, to my friends, everybody.  And

22 that's it.

23       THE COURT:  All right.  Okay.  Thank you.

24       THE DEFENDANT:  Thank you.

25       THE COURT:  Very well.  I'm going to think about,

1  need some time to think about what I'm going to do with Mr.

2  Towel in terms of his sentence.

3          MR. GORSON:  And, Your Honor, apparently Mr. Jackson

4  would like to say a few words to the Court, would it be --

5          THE COURT:  Who is Mr. Jackson?

6          MR. GORSON:  Mr. Jackson is the father-in-law.

7          THE COURT:  All right.  Sure, you can speak.

8          MR. GORSON:  Step right up to this microphone at the

9  podium.

10          THE COURT:  You can come forward.

11          THE CLERK:  Raise your right hand, please.  State

12  your name, spell your last name.

13          MR. JACKSON:  Timothy Jackson, J-A-C-K-S-O-N,

14  Jackson.

15          (Mr. Jackson sworn)

16          THE CLERK:  Thank you, sir.

17          MR. JACKSON:  Good morning, Your Honor.

18          THE COURT:  Good morning.  Mr. Jackson, what is it

19  that you want to tell me?

20          MR. JACKSON:  Well, back in like 2014, 2015 I had an

21  occasion to meet Xavier and he's a little rough around the

22  edges around that time.  I kind of took him under my wing and

23  we had little prayer sessions together that he would get

24  better, to help him get a job.  My friend City Councilman

25  Kenata Johnson (ph) told me that if this all works out well or

1 whenever it does in the future that he has something lined up

2 for him a good job with the city.

3       He's been trying his best to take care of his family.

4 He's -- I see changes in him over the last five years that I

5 didn't see when I first him, and I could just truly testify to

6 that. He's like, not night and day yet, but getting there I

7 would say, you know, and he's on the right path on the right

8 track.

9       Just to tell you a little bit about myself, I've

10 worked -- I'm 58 years old, I've been working since I was 14,

11 been unemployed for three months out of my life, raised four

12 kids, I've got five grandkids, and I look at my daughter and

13 Xavier something like a mirror of myself, but I wasn't never

14 incarcerated like that.

15       But, you know, as far as being a family man I see a

16 different change in them. And that's all I really wanted to

17 say, he has been taking care of my grandkids. He's been

18 looking for a job, I've been trying to look for jobs with him,

19 you know, because I know some people that can get him a job,

20 like I said, Councilman Kenata Johnson I know him very well.

21       I know the Court can't excuse him all the way --

22       THE COURT: Well, he was hanging out with some --

23       MR. JACKSON: -- because I've been listening to the

24 case, Your Honor.

25       THE COURT: I agree. And he was hanging out with

1  some bad people doing some really bad things.

2         MR. JACKSON:  Yeah.

3         THE COURT:  That led to someone's death, if you had

4  heard the trial.  I tried two cases involving that

5  neighborhood.

6         MR. JACKSON:  Yeah, I fully understand the Court,

7  Your Honor, in that aspect of this case.  But I don't think --

8  I just wouldn't believe it if he went back on the wrong track,

9  I wouldn't believe it.  I mean, I might faint, you know, if I

10  heard something about him again.

11         THE COURT:  Okay.  Thank you very much.

12         MR. JACKSON:  You're welcome.

13         MR. GORSON:  Thank you, Your Honor.

14         THE COURT:  I'm going to take a few minutes and think

15  about the sentence.

16         THE CLERK:  All rise.

17     (Recessed at 10:53 a.m.; reconvened at 11:15 a.m.)

18         THE COURT:  You may be seated.

19         Is the Government and the defense ready for me to

20  pronounce sentence?

21         MR. GORSON:  Yes, Your Honor.

22         MR. ORTIZ:  Yes, sir.

23         THE COURT:  Very well.

24         So first of all, thank you very much for your

25  presentation and your arguments.  They were helpful to the

1  Court in considering what will be an appropriate sentence for

2  Mr. Towel.  Taking into account the fact that as you all know,

3  I have to fashion the sentence that will be not greater than it

4  is necessary to accomplish the goals of sentencing, which are

5  to reflect the seriousness of the offense, deter Mr. Towel from

6  committing further crimes in the future, as well as others and

7  protect the community at large, as well as provide him the

8  opportunity for rehabilitation.

9       And in fashioning the sentence, I have to consider

10  the guidelines and the guidelines in this case call for serious

11  time, 37 to 46 months.  I understand that the conduct here

12  occurred -- his history in 2010 and 2014.  He did not receive

13  any points and even if he had received points and he would've

14  been in a criminal history category of 3, the guidelines would

15  change only slightly because his criminal history would've been

16  46 to 57 months whereas the guidelines today are 36 to 46, so

17  they will have overlap even if I was to consider that.

18       I think I have to consider the guidelines as a

19  factor, of course, and I have to consider the nature and

20  circumstances of the offense of conviction.  I have to consider

21  his history and characteristics and I have to balance the need

22  to reflect the seriousness of the offense, the need to promote

23  respect for the law, and provide just punishment as well as

24  deterrence and protecting the public, and make sure that I

25  treat similarly situated defendants similarly.

1          So in this particular case Mr. Towel participated

2   in a conspiracy in which he actively sold crack cocaine in the

3   ground area of the West Mill Creek Playground in Philadelphia

4   between 2010 and 2014.

5          And during the course of the conspiracy he operated

6   as a seller and a look-out.  He ultimately agreed to distribute

7   at least 112 grams to 196 grams of crack cocaine during his

8   involvement with the drug conspiracy on the ground.  And

9   although the leader of the drug conspiracy used his family home

10  to store drugs as Attorney Ortiz points out, used the -- his

11  own to further the goals of the conspiracy.

12         The Government I think at the bail hearing and at the

13  hearing today advised that either Towel or Towel's mother was

14  the owner of the home and knew or allowed Porter to use that

15  home.  So I have to consider that, because that is not -- it

16  was not reasonably foreseeable that the defendant knew of such

17  actions, although he even admitted being part of that

18  conspiracy.

19         He reported -- reportedly the defendant is 26 years

20  old today.  He has -- did not receive any criminal history

21  point, though the overact of Count I in the instant case.  Is a

22  lifelong resident of Philadelphia.  He had three children.

23  He's actively participating in the care of his children with

24  his girlfriend Louise Williams.

25         His lengthy incarceration will be a tremendous burden

1  to his girlfriend, as well as to his children, and I think

2  that one of the things that I think merit some consideration to

3  vary from the guidelines is the fact that since he pled guilty

4  and since this offense, he has not engaged in any further

5  criminal activity which is commendable.

6        I think that at the time of the commission of this

7  crime he was young and immature, I think.  I agree with defense

8  counsel that he is a changed person.  I also agree with his

9  father-in-law that the man that I have in front of me today is

10  a different man than the man who was involved in selling on the

11  streets drugs and being a look-out for a period of time in his

12  teens to his early twenties.

13        So I do think that he is remorseful for what he has

14  done in the past and I think that he's at least on the right

15  track to rehabilitation by the fact that his post-conviction

16  rehabilitation has been commendable.

17        I do think also that although he received probation,

18  he spent 17 months and that time he spent in jail is time that

19  he's not going to get credit, and that deserves some

20  consideration as a reason to vary from the guidelines.

21        So I do intend to give him a variance from the

22  guidelines.  I think he is, out of all the people I've heard,

23  he is at the low end of the totem pole in terms of the criminal

24  activity and he merits some consideration.

25        I do understand also that he does not have any mental

1 health issues, there are no alcohol problems, that he is a

2 high school graduate, and he has expressed an interest in

3 continuing his education, has expressed an interest in getting

4 a decent job.

5 And he has at least a consistent work history since

6 2016, and I do think that if he continues to search for a job,

7 he will be able to find one. That will give him an opportunity

8 to meet his responsibilities at home and also his

9 responsibilities to the Court with regards to the sentence that

10 I intend to impose.

11 So I have to consider the request for a variance of

12 one month followed by supervised release that has been

13 requested. Quite frankly, I never thought for a minute that a

14 variance where he will only spend one month incarceration will

15 be appropriate. I think that will seriously depreciate the

16 seriousness of the crime of conviction and the criminal

17 offense. But I do think that some consideration should be

18 given to who he is, what he has done and has not done, the role

19 that he played in this conspiracy. Because from my view, I

20 think he is one of the least culpable of all of the defendants

21 that I heard from, so he's at the bottom of the totem pole.

22 And my intent is to give him a variance that will

23 still require him to serve time in jail, to atone for his

24 criminal conduct, but will take these various factors,

25 including the guidelines into account.

1          And my intent is to impose a sentence that I think

2  is sufficient and not greater than necessary to accomplish the

3  goal sentence of 20 months on Count I, followed by a period of

4  five years on Count I supervised release.  I think that's the

5  maximum, right, of supervised release, five years?

6          MR. PRIOLEAU:  Yes, Your Honor.

7          THE COURT:  And I will impose a $100 special

8  assessment.  I will also make some provisions for the payment

9  of that while he's in prison.

10          That is the intent of the Court to give him a

11  variance, but he still has to go back and begin serving a

12  balance of 20 months sentence.  I think that is a fair and

13  sufficient, and not greater than necessary to accomplish the

14  goals of sentencing.

15          Does the Government have any questions?

16          MR. ORTIZ:  No, sir.

17          THE COURT:  Defense?

18          MR. GORSON:  Judge, just for clarification, is that

19  20 months?

20          THE COURT:  20 months.

21          MR. GORSON:  Thank you very much, Your Honor.

22          THE COURT:  Did you hear me wrong?

23          MR. GORSON:  I wasn't quite certain.

24          THE COURT:  I said 20 months.

25          MR. GORSON:  Thank you, sir.

1          THE COURT:  All right.  Mr. Towel, I want to speak

2    to you before I impose the sentence, because I'm giving you a

3    break.  You were looking at some serious time 37 months, I

4    could've put you way very clearly in the 40 to 46 months

5    without blinking an eye.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Because the crime that you were involved

8    with were very serious.  You were a young kid at the time that

9    you got involved in this type of crime, and I think you showing

10   me -- you have shown me since you own up to your responsibility

11   that you are salvageable.  And I'm accounting for that in my

12   sentence.

13         You seem to want to stay on the right track, you seem

14   to have a loving family here, and you have some

15   responsibilities, and you are making an effort.  And I see that

16   and I'm going to take a chance because I think you got it.  And

17   I'm hopeful that I will not see you back here again.

18         I'm still a young man, I'm not that old, and I'll be

19   here in a while, and so I'm going to have you under my

20   supervision for a while.  And you know, I appreciated your

21   lawyer's request, but this is too much of a serious crime and

22   what I do with you I have to take into consideration when the

23   next people come in front of me.  But I think you are a little

24   bit different than most of the people that are going to be

25   coming in front of me for sentencing, and I wanted to explain

1  that to you because I think that you have a tremendous amount

2  of potential and you are trying to do the right thing.

3       Somehow you are not the same person that was

4  committing these crimes in 2010 through 2014 and we are in

5  2019, and you seem to somehow to be trying.  And I want you to

6  continue that because I know it's tough that you're going to

7  have to go back for a period of time, but you're going to get

8  some credit for good time, and hopefully get out of prison

9  sooner rather than later.

10      You have a little bit of time to apply for programs

11  in the Bureau of Prison and see if you could use your time

12  wisely so that you could come out and be a better person and

13  have skills that will allow you an opportunity to get a job and

14  be supportive of your family.

15      So I wanted to say that.  I'm mindful of the fact

16  that it's pretty tough to the one hand say that you are doing

17  some good things in terms of your post-conviction

18  rehabilitation, on the other hand recognizing the nature of the

19  crime sending you back to prison.  It's not easy for me to do

20  that.  But if I don't, I'll be sending the wrong message, and

21  the nature of these crimes are extraordinarily serious.  But

22  you deserve a break and I'm giving you a break.  You don't

23  realize how much of a break I'm giving you, but I am.

24      So with that, I want you to stand so that I can

25  impose sentence.  Okay?

1     THE DEFENDANT:  Yes, sir.

2     THE COURT:  It is the judgment of this Court that

3 Xavier Towel is hereby committed to the custody of the Bureau

4 of Prison to be imprisoned for a term of 20 months on Count I.

5 Upon release from imprisonment, he shall be placed on

6 supervised release for a term of five years on Count I.

7     And while on supervised release, you shall not commit

8 another federal, state, or local crime, and you will be

9 prohibited from possessing a firearm or a dangerous device, and

10 you shall not possess any illegal controlled substance, and you

11 shall comply with the other standard conditions that have been

12 adopted by this Court.

13     You have to submit to one drug test within 15 days of

14 commencement of supervised release and at least two tests

15 thereafter as determined by the probation officer, and you

16 shall submit to collection of DNA sample at the direction of

17 the U.S. Probation Office.

18     In addition, you should comply with the following

19 additional conditions.  You shall participate in a program at

20 the direction of the probation officer aimed at learning a

21 vocation or improving your literacy, your educational level,

22 your employment skills in order to develop and improve skills

23 needed to obtain and maintain gainful employment.

24     You shall remain in any recommended program until

25 completed or until such time as you are released from

1  attendance based on a recommendation of the probation officer

2  and my approval.  I find that you do not have the ability to

3  pay a fine, so I will not impose a fine.  I have to impose a

4  special assessment of $100, and I'm going to direct that for

5  the period of time that you're going to serve the sentence,

6  that you participate in the Bureau of Inmate Financial

7  Responsibility and provide a minimum payment of $25 per quarter

8  towards the special assessment.

9          And in the event that you do not pay that special

10  assessment prior to you starting your supervision, you shall

11  satisfy the amounts in monthly installments of not less than

12  $25 to commence 30 days after you are released from prison.

13          Mr. Towel, do you understand the sentence I imposed?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And now before I read him his rights, is

16  there anything else procedurally or anything else that --

17  procedural error or anything that I could correct at this time?

18          MR. ORTIZ:  No, but to make the Court aware, we will

19  be filing a forfeiture motion consistent with the plea

20  agreement.

21          THE COURT:  All right.  Any opposition that I sign

22  it, I'm going to sign it as a matter of course and as part of

23  the sentence?

24          MR. GORSON:  No opposition.

25          THE COURT:  Okay.  You can present it to me.

1    MR. ORTIZ:  Thank you.

2    THE COURT:  And I will sign it.  Anything else?

3    MR. ORTIZ:  And I was just curious as whether or not

4 the Court is going to set a surrender date for the defendant?

5    THE COURT:  Yeah, I'll deal with that issue as soon

6 as I read him his appellate rights.  But any errors?

7    MR. ORTIZ:  No.

8    THE COURT:  Or procedural irregularities that you

9 want me to address?

10    MR. GORSON:  No, Your Honor.

11    THE COURT:  Have I -- has there been a meaningful

12 discussion under 3553(a) factors?

13    MR. GORSON:  Yes, sir.

14    MR. ORTIZ:  Yes, sir.

15    THE COURT:  Very well, Mr. Towel, I have to read you

16 your appellate rights, because you remember when you pled

17 guilty you -- by pleading guilty limited your appellate rights

18 in a very significant way because you limited and you gave up

19 your right to directly appeal to use at a later proceeding like

20 a writ of habeas corpus, or what we call a 2255 to challenge

21 and attack your conviction, your sentence, or the matters that

22 I discussed with you regarding your guilty plea, regarding the

23 very limited exceptions.

24    That under the guilty plea, for example, unless you

25 could establish a waiver of your appellate rights, was not

1  knowingly, intelligently, and voluntarily entered, or that

2  enforcing that waiver will be a miscarriage of justice, you

3  could only file an appeal if the Government files an appeal, if

4  the sentence I give you exceeds the statutory maximum, or if I

5  gave you an upward departure or an upward variance.

6        I've done none of that.  I think the sentence is

7  within the statutory minimum.  I did not give you a departure

8  upwards.  I gave you a downward variance.  But in any event,

9  you could only file a motion for relief under the Section 2255

10  and the only claim that you could raise is that your lawyer was

11  ineffective in providing assistance.

12        So notwithstanding that limitation, if you wish to

13  appeal you have a right to appeal within 14 days of the date

14  that I assigned the judgment and commitment.  You have the

15  right to an attorney and if you cannot afford an attorney I

16  will appoint you one free of charge.

17        You have the right to ask me for a waiver of costs to

18  file appeal if you cannot afford costs.  Do you understand your

19  appellate rights?

20        THE DEFENDANT:  Yes.

21        THE COURT:  All right.  Good luck.

22        Now, on the issue of surrender, what -- have you --

23  what is your request?

24        MR. GORSON:  Judge, I would ask Mr. Towel, as you

25  know, has been out on bail conditions and has been compliant,

1   so I would ask that once the -- once he's designated by BOP

2   he be permitted to turn himself in to whatever facility.  I

3   would ask that the Court recommend the facility be as local as

4   possible, recognizing that it's a BOP decision.

5           THE COURT:  Okay.

6           MR. GORSON:  That'd be the request of defense.

7           THE COURT:  Right.  I don't know, what is the

8   average, Mr. -- do we know?

9           MR. PRIOLEAU:  Yeah, typically we do 30 to 45 days,

10  Your Honor.

11          THE COURT:  All right.  Mr. Ortiz, do you have any

12  objection if I give him 45 days to surrender?  He's done well.

13          MR. ORTIZ:  No, I don't.

14          THE COURT:  All right.  I'll give him 45 days,

15  hopefully you'll have the extension.  Good luck, take advantage

16  of the opportunities.  There are some opportunities and good

17  luck, Mr. Towel.

18          THE DEFENDANT:  Okay.  Thank you.

19          MR. GORSON:  Thank you very much, Your Honor.

20          THE COURT:  Okay.  Thank you.

21          THE CLERK:  All rise.

22  (Proceedings concluded at 11:35 a.m.)

23                      *  *  *  *  *

24

25

CERTIFICATION

I, **Mary E. Dring**, Court approved transcriber, certify that the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

May 3, 2019