IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 17-519-6 |
| | : | |
| XAVIER TOWEL | : | |

## <u>MEMORANDUM</u>

**Juan R. Sánchez, C.J.**                                                                           **June 4, 2020**

Defendant Xavier Towel, who is currently serving a 20-month term of incarceration, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Towel seeks release to home confinement asserting the coronavirus disease 2019 (COVID-19) pandemic and his asthma, which he contends places him at an increased risk of harm from the virus, are extraordinary and compelling circumstances justifying his release. The Government opposes Towel's motion, citing the numerous measures the Bureau of Prisons (BOP) has taken to prevent the spread of COVID-19 in its facilities and Towel's medical records, which the Government contends shows that Towel does not suffer from moderate or severe asthma. Because the COVID-19 pandemic and Towel's mild, exercise-induced asthma do not present extraordinary and compelling reasons, the Court will deny his motion.

## BACKGROUND

On October 4, 2018, Towel pleaded guilty in this Court to conspiracy to distribute 28 or more grams of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B). On April 2, 2019, Towel was sentenced 20 months of incarceration. Towel has since been serving his term at the Metropolitan Detention Center in Brooklyn, New York (MDC). Towel's anticipated release date is November 2, 2020.

Since Towel's sentencing much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. *See WHO characterizes COVID-19 as a pandemic*, World Health Org. (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.   The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Watch for symptoms*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 26, 2020). To date, the virus has infected nearly 1,802,470 people in the United States and resulted in 105,157 deaths. *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated June 3, 2020).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. *See id.* The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People Who Are At Higher Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 3, 2020). High risk underlying medical conditions include moderate to severe asthma, chronic lung disease, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing dialysis, liver disease, and immunocompromised conditions from cancer treatment, smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id.*

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In New York, like in many other states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Nonessential businesses have closed their doors, schools have closed for the rest of the academic year, and people are avoiding gatherings of any kind.

In light of the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated May 7, 2020). Nevertheless, in response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 3, 2020).

On March 27, 2020, counsel for Towel was advised by the Federal Defenders of New York that he was considered a "high-risk individual vulnerable to COVID-19" due to having a history of asthma. On April 3, 2020, Towel's counsel wrote a letter to Derek Edge, the MDC's warden, requesting Towel be released to home confinement for the remainder of his sentence. On April 29, 2020, Warden Edge denied the request, asserting Towel was a "holdover" inmate and not eligible

for release. On April 30, 2020, Towel's counsel sent Warden Edge a second letter asserting Towel was not a holdover inmate but designated to the MDC. To date, Towel has not received a response to his April 30 letter.

On May 4, 2020, thirty days after he submitted his initial request for release to Warden Edge, Towel filed the instant motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Towel requests immediate removal from the MDC and to serve the remainder of his sentence on home confinement at his fiancé's house in Philadelphia, Pennsylvania. He asserts the COVID-19 pandemic and his asthma are "extraordinary and compelling" circumstances warranting his release. The Government opposes Towel's motion, citing the numerous measures the Bureau of Prisons (BOP) has taken to prevent the spread of COVID-19 in its facilities and Towel's medical records, which the Government argues demonstrates he does not suffer from moderate or severe asthma.

The Court held a video conference hearing on May 21, 2020. At the hearing, Towel consented to proceed with the hearing on his motion by video conference and waived his right to an in-person hearing. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 15002(b)(1)(A), (b)(4), 134 Stat. 281, 528–29 (2020). Towel testified at the hearing regarding his asthma. He testified he was diagnosed with asthma as a child, currently uses an Albuterol rescue inhaler when he exercises, is otherwise in good health, and does not experience general shortness of breath.

**DISCUSSION**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court is empowered to modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies.[1] In relevant part, § 3582(c)(1) provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Congress, however, did not define the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 944(t). Rather, Congress delegated the authority to define "extraordinary and compelling reasons" to the U.S. Sentencing Commission.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a)," that—
>
> (1)   (A)   Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2)   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)   the reduction is consistent with this policy statement.

---

[1] A defendant may move for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government conceded that Towel has exhausted his administrative remedies at the May 21, 2020, video conference hearing.

Application Note 1 to § 1B1.13 enumerates three specific reasons that qualify as "extraordinary and compelling" based on the medical condition, age, or family circumstances of the defendant. U.S.S.G. § 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[2] *Id.* n.1(D).

The only applicable extraordinary and compelling reason here is Application Note 1(D)'s catch-all provision. Towel argues extraordinary and compelling reasons exist for his release due to the COVID-19 pandemic and him being a "high-risk individual vulnerable to COVID-19" because of his asthma. The Government argues Towel does not present any basis for compassionate release because the general threat of COVID-19 is not a basis for release and his asthma is well-controlled at the MDC. The Court agrees with the Government. The COVID-19 pandemic and Towel's mild, exercised-induced asthma do not rise to the level of extraordinary and compelling reasons justifying for his release. Towel's motion will therefore be denied.

At the outset, Towel's generalized concern regarding COVID-19 and the BOP's efforts to contain the virus is insufficient to justify compassionate release. Recently, in *United States v. Raia*, the Third Circuit held "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's

---

[2] Although Application Note 1(D) includes language requiring a determination of extraordinary and compelling reasons by the BOP director, this is no longer required as the First Step Act removed this language. A majority of courts have found that the Sentencing Commission's "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (quoting *United States v. Beck*, No. 13-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (collecting cases)).

spread." 954 F.3d 594, 597 (3d Cir. 2020). As a result, Towel's generalized concern about COVID-19 and the BOP's efforts in containing the virus at the MDC is insufficient by itself to justify compassionate release. The Court therefore turns to Towel's asthma to determine if he is a high risk of developing serious complications from COVID-19 creating extraordinary and compelling reasons that warrant his release.

Next, even when considering the COVID-19 pandemic, Towel's mild, exercise-induced asthma does not present extraordinary and compelling reasons for his release. The Center for Disease Control only lists "moderate to severe asthma" as a risk factor for serve illness due to COVID-19. *People with Asthma*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last updated April 2, 2020) ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."). The U.S. Department of Health and Human Services provides that moderate asthma occurs if, without treatment, any of the following are true:

- Symptoms occur daily;
- Inhaled short-acting asthma medication is used every day;
- Symptoms interfere with daily activities;
- Nighttime symptoms occur more than 1 time a week, but do not happen every night; or
- Lung function tests are abnormal (more than 60% to less than 80% of the expected value).

*Asthma Care Quick Reference Guide*, U.S. Dep't of Health and Human Servs. (Sept. 2012), https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf. Where an inmate presents symptoms of moderate asthma, courts have found the condition is an extraordinary and compelling reason justifying release in light of COVID-19. *See, e.g.*, *United States v. Hernandez*, No. 18-834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (granting compassionate release to inmate with "moderate to severe" asthma).

7

Here, Towel does not present symptoms of moderate asthma and therefore his condition does not rise to extraordinary and compelling circumstances warranting his release. Based on his medical records and testimony, Towel does not require daily asthma medication, his symptoms do not interfere with daily activities, and his lung function tests appear normal. First, Towel was issued a rescue Albuterol inhaler by the BOP when he entered the MDC in June 2019. The prescription for this inhaler specifically stated that it should *not* to be used on a daily basis but for isolated attacks as necessary.

Next, Towel's use of the inhaler suggests he does not need it to manage daily asthma symptoms. Towel initially received a 90-day supply of his Albuterol inhaler. He, however, did not renew his inhaler prescription until April 30, 2020—more than ten months after receiving his initial prescription. Towel also confirmed that he does not need his inhaler to manage daily asthma symptoms as he testified he typically uses his inhaler before or after exercising. He further testified he does not experience general shortness of breath.

Lastly, Towel's lung function tests appear normal. Towel's medical records indicate he received a Wright Peak Flow test, which measures an individual's maximum rate of exhalation, on April 30, 2020. His effort for this test was recorded as "good," suggesting his asthma is controlled and he is not having abnormal air flow issues. Towel further testified that he is overall in good health and feeling well.

Given the foregoing, it appears that Towel experiences mild, exercise-induced asthma, which is not a risk factor for severe illness due to COVID-19. His asthma also appears to be well-controlled in the MDC. As a result, Towel's asthma and the COVID-19 pandemic are not extraordinary and compelling circumstances warranting Towel's release at this time. *See, e.g.*, *United States v. Zehner*, No. 19-485, 2020 WL 1892188, at *2-3 (S.D.N.Y. Apr. 15, 2020)

(denying compassionate release for defendant with asthma where the defendant presented no symptoms of the disease and was in reasonably good health). The Court will thus deny his motion for compassionate release.

Notwithstanding the foregoing, the Court recognizes that medical conditions can change rapidly, especially in light of the COVID-19 pandemic. Thus, the Court's denial of Towel's motion will be without prejudice as to reassertion. Should his current medical situation change, Towel is free to file a renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

**CONCLUSION**

In sum, because Towel has failed to demonstrate extraordinary and compelling reasons warranting his release, the Court will deny his motion for compassionate release pursuant to § 3582(C)(1)(A) without prejudice as to reassertion.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.